**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x

| | |
|---|---|
| ANDY STROUD, INC. and ANDREW STROUD, | : |
| | : |
| Plaintiffs, | : |
| | : |
| -against- | : |
| | : |
| STEVEN AMES BROWN and LISA SIMONE KELLY, as administrator of THE ESTATE OF NINA SIMONE | : |
| | : |
| Defendants. | : |

08 Civ. 8246 (HB)

OPINION & ORDER

-------------------------------------------------------------x

**Hon. HAROLD BAER, JR., United States District Judge:**

Plaintiffs Andy Stroud, Inc. and Andrew Stroud ("Plaintiffs") filed their Complaint seeking a declaration of rights to certain master recordings of the late jazz singer Nina Simone, and alleging, *inter alia*, copyright infringement, false designation of origin under the Lanham Act, fraud and tortious interference with prospective contractual advantage.  Defendant Steven Ames Brown ("Brown") now moves this Court to dismiss Plaintiffs' Complaint on the following grounds: (1) for lack of personal jurisdiction, pursuant to Fed R. Civ. P. 12(b)(2); (2) for improper venue, pursuant to Fed. R. Civ. P. 12(b)(3); and (3) for failure to state a claim for which relief may be granted, pursuant to Fed. R. Civ. P. 12(b)(6).  Alternatively, Brown moves the Court to dismiss this action without prejudice pursuant to the prior pending action doctrine. For the reasons set forth below, Brown's motion to dismiss without prejudice under the prior pending action doctrine is granted.[1]

---

[1] Because this action will be dismissed pursuant to the prior pending action doctrine, the Court finds no occasion to address Brown's motion to dismiss for failure to state a cause of action pursuant to Federal Rule 12(b)(6).

## I. FACTUAL BACKGROUND[2]

A.   **Allegations of the Instant Complaint**

This action centers on, *inter alia*, the ownership rights of certain master recordings of the late jazz singer Nina Simone.  Plaintiff Stroud had been married to Simone from 1961 until 1972, and Plaintiffs produced Simone's performances and recordings.  Compl. ¶¶ 16-17.  In 1970, Plaintiff Stroud provided RCA Records with approximately 77 master recordings of Simone's performances for restoration and preservation purposes.  *Id.* ¶ 20.  When Plaintiff Stroud and Simone's marriage ended in 1972, they executed a Separation Agreement to settle their respective property rights.  *Id.* ¶ 21.  Plaintiffs allege that the Separation Agreement provided that the right, title and interest to certain of Simone's recordings would vest solely in Plaintiff Stroud if Simone failed to pay him the $2,300 he paid to RCA for the restoration of the recordings; Plaintiffs allege that Simone did not pay this sum, and that the ownership rights in the recordings automatically vested in Plaintiff Stroud.  *Id.* ¶¶ 23-24.  Plaintiffs further allege that the Separation Agreement also provided Plaintiff Stroud with unconditional ownership of certain other recordings, and that Plaintiff Stroud also retains all rights to various other works, including sound recordings, compilations and artwork.  *Id.* ¶ 25, 27-28, 31-32.  Following his separation from Simone, Plaintiff Stroud licensed certain of the subject recordings to several recording companies for distribution.  *Id.* ¶ 26.

Brown is an entertainment law attorney living and practicing law in California.  *Id.* ¶ 6-7, Declaration of Steven Ames Brown ("Brown Decl.") ¶ 3-4.  It is undisputed that Brown is not licensed to practice law in the State of New York, nor at any time has he owned any real or personal property or maintained an office, telephone or bank account in New York.  *See* Brown Decl. ¶ 5-6.  Brown, while representing Simone as her attorney, entered into a written contract with Simone in 1990 pursuant to which Brown would be entitled to a forty percent ownership interest in any money or rights recovered in litigation he undertook on Simone's behalf.  *See* Compl. ¶ 33.  Brown subsequently filed two lawsuits on Simone's behalf in the United States District Court for the Northern District of California in the 1990's, in which Simone claimed

---

[2] The facts are taken from the Complaint, as well as from the affidavits of the parties submitted in relation to the motion to dismiss for lack of personal jurisdiction.  In deciding a motion to dismiss under Rule 12(b)(2), unlike on a motion to dismiss under Rule 12(b)(6), this Court is not limited to the four corners of the complaint; rather, the plaintiff may state its jurisdictional allegations in either the complaint or affidavits and supporting materials.  *See Whitaker v. American Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001); *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 363, 365 (2d Cir. 1986).  Furthermore, as it is not improper for the Court to consider such materials extraneous to the Complaint on a Rule 12(b)(2) motion, Brown's concomitant Motion to Strike the Opposition Declarations of Andrew Stroud and Alice Brodie is denied.

ownership of 104 of her master recordings (the "1990's Actions").  *Id.* ¶¶ 34-37.  The defendants in the 1990's Actions claimed ownership in half of the recordings under a chain of title from Plaintiff Stroud and his now-defunct production company Stroud Productions & Enterprises, Inc. ("SPE").  Brown Decl. ¶ 15.  In each of these actions, the court found that Simone was the owner of the copyrights in the subject works, and entered five separate final judgments and permanent injunctions against various defendants in connection with the sound recordings.  Compl. ¶ 38; Brown Decl. ¶ 14.  As a result of those judgments, and pursuant to the agreement between Brown and Simone, Brown obtained a 40% interest in the recordings.  *See* Compl. ¶ 33-39; Brown Decl. ¶ 15.  Plaintiffs apparently were made aware of the final judgments and permanent injunctions entered in these actions at least as early as 2000, when Brown personally discussed the judgments with Plaintiff Stroud in a telephone conversation.  Brown Decl. ¶ 16.  After her death in 2003, Simone's estate was submitted for probate in Los Angeles Superior Court in Los Angeles, California.  *Id.* ¶ 12.

Plaintiffs allege that, upon obtaining ownership rights in the sound recordings, Brown entered into various license agreements granting rights to exploit the recordings, including a 2004 license to Castle Rock Entertainment for the use of Simone's sound recording entitled "Just in Time" for use in the feature film "Before Sunset" and a license to Snapper Music, a music distributor, to exploit certain recordings from collections entitled "Nina Simone Sings Billie Holiday" and "Gospel According to Nina Simone."  *See* Compl. ¶ 40-41.  Plaintiffs allege that as a result, Brown has derived substantial revenue in New York and through interstate and international commerce.  *See, e.g.*, Stroud Decl. ¶ 16.  Plaintiffs claim ownership of these recordings, Brown's licenses they allege were unauthorized and therefore constituted copyright infringement; Plaintiffs also allege that Brown is liable for false designation of the origin of the works and for fraudulent misrepresentation based on allegedly false and misleading representations that he was the rightful owner of the copyrights.  Plaintiffs further claim that by representing they he was the owner of the copyrights, Brown has caused Plaintiffs to lose opportunities to enter into license agreements with third parties.

**B.**     **Other lawsuits involving the Parties**

The instant action is but one of numerous lawsuits that have been filed in recent years surrounding the copyright ownership and use of various of Simone's sound recordings.  As noted above, Brown, on behalf of Simone, initiated the two 1990's Actions in the Northern District of California to establish ownership of various sound recordings.  Subsequently, on October 5,

2007, Plaintiff Stroud and SPE filed a complaint in this Court against Castle Rock Entertainment, Inc., Warner Bros. Entertainment, Inc. and Warner Bros. Independent Pictures, Inc. for copyright infringement and unfair competition arising out of their use of Simone's sound recording "Just in Time" in the feature film "Before Sunset" (the "Castle Rock Action").

Also in 2007, SPE filed an action in New York Supreme Court in New York County against BMG Music, also relating to the copyrights in certain Simone recordings (the "New York State Action"). In the summer of 2007, SPE apparently offered to license the disputed recordings to BMG, but BMG refused to close the deal because Brown claimed rights to the recordings. Declaration of Alice L. Brodie ("Brodie Decl.") ¶ 6. SPE subsequently amended the complaint in the New York State Action to add Brown as a defendant. Brown filed an answer in the New York State Action, asserting lack of personal jurisdiction as an affirmative defense.

In approximately May 2008, Brown learned that Plaintiff Stroud was claiming copyright ownership of numerous Simone sound recordings, including many of the recordings the ownership of which, pursuant to the judgments entered in prior litigations, was vested in Simone and to which Brown claims 40% ownership interest. Brown Decl. ¶ 19. As a result, on May 7, 2008, Brown filed an action for declaratory judgment to establish the ownership rights in the disputed works in the United States District Court for the Northern District of California against Plaintiff Stroud and SPE (the "California Action"). Plaintiff Stroud moved the court in the California Action to dismiss the action for lack of personal jurisdiction. He did not move for a stay or dismissal due to any prior actions pending in New York state or federal court, *i.e.*, the New York State Action against BMG or the Castle Rock Action. While the motion to dismiss the California Action was *sub judice*, Plaintiffs filed the instant action on September 26, 2008. The court in the California Action then granted the motion to dismiss, but granted Brown leave to amend the complaint to include additional jurisdictional facts. *See Brown v. Stroud*, No. C-08-2348 VRW, 2008 U.S. Dist. LEXIS 75784 (N.D. Cal. Sept. 30, 2008). Upon the filing of the Amended Complaint, Plaintiff Stroud once again moved the court to dismiss for lack of personal jurisdiction; again, there was no request for a stay or dismissal pursuant to the prior pending action doctrine. By an opinion and order dated January 26, 2009, the Northern District of California denied the motion to dismiss and found that Brown had satisfied his burden of showing that Stroud was amenable to suit in California. *See Brown v. Stroud*, No. C-08-2348, slip op. at 2-9 (N.D. Cal. Jan. 26, 2009). Plaintiff Stroud subsequently filed an answer and

counterclaims in the California Action alleging the identical causes of action that are alleged in his complaint in the instant action.

### III.  DISCUSSION

**A.      Personal Jurisdiction**

A plaintiff opposing a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule 12(b)(2) bears the burden of showing that the court has jurisdiction over the defendant. *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007); *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1994).  Where, as here, there has been no evidentiary hearing and the jurisdiction issue is addressed on affidavits, the plaintiff need only make a *prima facie* showing that the defendant is amenable to personal jurisdiction. *A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79 (2d Cir. 1993).  Eventually, however, personal jurisdiction must be established by a preponderance of the evidence, either at an evidentiary hearing or at trial. *Id.* at 79-80; *see Credit Lyonnais Secs. (USA), Inc. v. Alcantara*, 183 F.3d 151, 154 (2d Cir. 1999).  The Court must accept the allegations of the plaintiff's complaint and affidavits as true, and all doubts are resolved in favor of the plaintiff, notwithstanding any controverting presentation by the moving party. *A.I. Trade*, 989 F.2d at 79-80; *CutCo*, 806 F.2d at 365; *Cavu Releasing, LLC v. Fries*, 419 F. Supp. 2d 388, 391 (S.D.N.Y. 2005).

The instant action alleges both federal and state law causes of action; thus this matter invokes both this Court's federal question and diversity jurisdiction.  In a federal question case where a defendant resides outside the forum state and the federal statute in question does not specifically provide for nationwide service of process, a federal court applies the forum state's personal jurisdiction rules. *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997). In this case, Plaintiffs' federal causes of action arise under the Copyright Act of 1976 and the Lanham Act – neither of which provides for nationwide service. *See* 17 U.S.C. § 501, et seq.; 15 U.S.C. §§ 1051 et seq.; *see also Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 22 (2d Cir. 2004). Therefore, with respect to Plaintiffs' federal claims, this Court must apply the law of the forum state to determine whether Brown is subject to personal jurisdiction on the federal claims. *Id.*  Likewise, the amenability of an out-of-state defendant to suit in a federal court on a claim based on diversity of citizenship is determined in accordance with the law of the state in which the court sits. *Metropolitan Ins. Co.*, 84 F.3d at 567.  Thus, for Brown to be amenable to suit in

New York, Plaintiffs must show that New York's long-arm statute—CPLR § 302—confers personal jurisdiction.

In resolving a question of personal jurisdiction, the Court must conduct a two-part inquiry: first, it must determine whether the plaintiff has shown that the defendant is amenable to service of process under New York's long-arm statute; and second, it must assess whether the court's assertion of jurisdiction under that law is consistent with the requirements of due process. *Metropolitan Ins. Co.*, 84 F.3d at 567; s*ee also Best Van Lines*, 490 F.3d at 242.  Because Plaintiffs do not contend that Brown's "contacts with New York are so continuous and systematic that [he] is subject to the jurisdiction of courts in New York on a general jurisdiction theory," *Sole Resort, S.A. de C.V. v. Allure Resorts Management, LLC*, 450 F.3d 100, 103 (2d Cir. 2006) (internal citation omitted), they rely instead on a theory of specific jurisdiction, and the issue of whether the defendant is subject to personal jurisdiction must be analyzed individually for each cause of action.  *Ainbinder v. Potter*, 282 F. Supp. 2d 180, 184 (S.D.N.Y. 2003).

1. <u>New York's Long-Arm Statute</u>[3]

   **CPLR § 302(a)(1)**

---

[3] New York's long-arm statute, CPLR § 302(a), provides as follows:

> As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent:
>
> 1. transacts any business within the state or transacts anywhere to supply goods or services within the state; or
>
> 2. commits a tortious act within the state . . .; or
>
> 3. Commits a tortious act without the state causing injury to person or property within the state. . . if he
>
>> (i)   regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
>>
>> (ii)   expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or
>
> 4. owns, uses or possesses any real property situated within the state.

As Plaintiffs do not claim that this Court has personal jurisdiction over Brown under CPLR § 302(a)(2) or § 302(a)(4), the following analysis will be limited to the question of whether Brown is amenable to suit in New York under either CPLR § 302(a)(1) or §§ 302(a)(3)(i) or (a)(3)(ii).

Under CPLR § 302(a)(1), a non-domiciliary defendant is subject to personal jurisdiction if two conditions are met: (1) the defendant must "transact business" in New York; and (2) the claims against the defendant must arise out of that business activity.  *See CutCo*, 806 F.2d at 365; *Madden v. International Ass'n of Heat & Frost Insulators and Asbestos Workers*, 889 F. Supp. 707, 710 (S.D.N.Y. 1995). To determine whether a defendant has transacted business sufficient for the exercise of personal jurisdiction under CPLR § 302(a)(1), the issue is whether the defendant "has engaged in some purposeful activity in this State in connection with the matter in the suit."  *Madden*, 889 F. Supp. at 710; *see also Fort Knox Music, Inc. v. Baptiste*, 203 F.3d 193, 196 (2d Cir. 2000) (finding that transaction of business in New York requires that the defendant "purposefully availed himself of the privilege of conducting activities within New York and thereby invoked the benefits and protections of its laws"); *Ehrenfeld v. Bin Mahfouz*, 9 N.Y.3d 501, 508 (2007) ("The overriding criterion necessary to establish a transaction of business is some act by which the defendant purposefully avails itself of the privilege of conducting activities within New York.") (internal quotation marks and citations omitted).

A claim arises from a New York business transaction "when there is some articulable nexus between the business transacted and the claim sued upon, or when there is a substantial relationship between the transaction and the claim asserted."  *Sole Resort*, 450 F.3d at 103 (internal quotation marks and citations omitted).  Thus, "proof of one transaction in New York is sufficient to invoke jurisdiction under 302(a)(1), even though the defendant never entered New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted."  *PDK Labs*, 103 F.3d at 1109 (quoting *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460 (1988)) (internal quotations and alterations omitted).  To determine whether a sufficient nexus exists between a defendant's transaction of business and the cause of action, a court must evaluate the "totality of circumstances surrounding defendants' activities in New York in connection with the matter giving rise to the lawsuit."  *Id.* (quoting *Hoffritz For Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 60 (2d Cir. 1985)).

As this Court previously has held, the "totality of the circumstances" inquiry is particularly significant when a plaintiff, like Plaintiffs here, bases § 302(a)(1) jurisdiction on the defendant's transaction of business via telephone communications into New York.  "The mere existence of defendant's telephone conversations into New York are not sufficient to sustain New York long arm jurisdiction.  Telephone conversations are significant only if they are used

by the defendant to actively participate in business transactions in New York." *Carlson v. Cuevas*, 932 F. Supp. 76, 78 (S.D.N.Y. 1996) (internal quotations and citations omitted) (Baer, J.).  However, "[i]f the purpose of the calls is for the defendant to actively participate in business in New York, then they alone may support a finding of New York long arm jurisdiction under C.P.L.R. § 302(a)(1)." *Id.*  Indeed, there is no mechanical rule to determine when telephone communications are sufficient to confer personal jurisdiction; a court must look to the quality or depth of the communications rather than their quantity or breadth.  *Id.* at 79.

Plaintiffs' allegations suggest a number of Brown's contacts within New York that they argue are sufficient to confer personal jurisdiction under CPLR § 302(a)(1).  Most significantly, Plaintiffs allege that Brown has interfered with settlement negotiations in New York in both the New York State Action and the Castle Rock Actions, and that Brown has fraudulently represented to BMG, a New York corporation, that Brown should be sent royalties relating to the master works at issue in this matter, and that these representations have caused BMG to retain custody of property to which Stroud claims ownership.  *See* Declaration of Andrew Stroud ("Stroud Decl.") ¶ 10; Brodie Decl. ¶ 5-6.

Accepting these allegations as true, as I must, and viewing them in the light most favorable to the Plaintiffs, this Court finds that Plaintiffs' allegations, while based exclusively on somewhat self-serving allegations with scant factual support, are sufficient to satisfy their burden to make a *prima facie* showing of personal jurisdiction on their claims of fraud (Claim 7), unfair competition (Claim 8), and tortious interference with prospective contractual advantage (Claim 9).  Plaintiffs do not appear to dispute that Brown never was physically present in New York for the purposes of transacting business.  However, physical presence is not required under CPLR § 302(a)(1), *see PDK Labs.*, 103 F.3d at 1109, and Brown's alleged communications relating to the settlement negotiations that Plaintiffs New York State Action and additional representations to BMG regarding the ownership of the disputed master works are of sufficient "quality" and "depth" to show that Brown purposefully availed himself of the state of New York.  *See Ainbinder*, 282 F. Supp. 2d at 186 ("[N]egotiating a settlement agreement in New York would fall under the 'transacting business' prong of New York's long-arm statute.").  Plaintiffs have alleged that Brown's fraudulent representations to BMG, and others, regarding the ownership of the disputed masters resulted in BMG's refusal to turn over certain property to which Plaintiffs claim ownership, and have caused Plaintiffs to lose opportunities to enter into contracts with third parties to license use of the recordings.  These contacts, while sparsely pled, are sufficient

to show contacts in New York and share the requisite "substantial nexus" with Plaintiffs' allegations of fraud, unfair competition and tortious interference.

However, Plaintiffs' allegations regarding Brown's communications with Castle Rock and its counsel relating to settlement negotiations in the Castle Rock Action are insufficient to confer personal jurisdiction over Brown in relation to Plaintiffs claims of copyright infringement. While Plaintiffs have alleged that Brown controlled Castle Rock's defense and "direct[ed] settlement discussions," *see* Brodie Decl. ¶ 12, the copyright infringement claims do not "arise out of" those contacts. The claims of copyright infringement are premised in large part on Brown's allegedly unauthorized license of the recording of Simone's "Just in Time" for use in the film "Before Sunset." It is apparently undisputed that this license agreement was negotiated, executed and at least the initial license fee paid exclusively in the state of California in 2004, *see* Brown Decl. ¶ 27-28, while the alleged contacts with New York surrounding Brown's involvement in the Castle Rock settlement negotiations occurred, if at all, during 2007 and/or 2008. Thus, the copyright claims do not "arise out of" Brown's alleged subsequent involvement in the Castle Rock Action.

### CPLR § 302(a)(3)

Plaintiffs' remaining causes of action sound in copyright infringement under federal and state law (Claims 1-5 and Claim 10) and false designation of origin under the Lanham Act (Claim 6) and arise out of Brown's allegedly unauthorized licenses for the disputed works. Putting aside whether these claims ultimately will be shown to have merit, these claims arise out of commercial torts for which the key events occurred in California, and thus the first two elements of jurisdiction under CPLR § 302(a)(3) are satisfied. *See McGraw-Hill Cos., Inc. v. Ingenium Techs. Corp.*, 375 F. Supp. 2d 252, 256 (S.D.N.Y. 2005).

Plaintiffs' Complaint also sufficiently alleges that these acts have caused injury within the state of New York. *See* Compl. ¶ 53, 63, 75, 86, 93, 99, 145. Although neither party raises the issue, this Court finds it worth noting that there appears to be significant disagreement within this District regarding the locus of an injury in intellectual property cases. On the one hand, some cases have found that the torts of copyright infringement and trademark infringement cause injury "in the state where the allegedly infringed intellectual property is held." *McGraw-Hill*, 375 F. Supp. 2d at 256; *see also Overseas Media v. Skvortsov*, 407 F. Supp. 2d 563, 576 (S.D.N.Y. 2006) (discussing cases articulating the injury requirement in infringement actions as arising where economic injury is felt); *Design Tex Group, Inc. v. U.S. Vinyl Mfg. Corp.*, 04 Civ.

5002 (JSR), 2005 U.S. Dist. LEXIS 2143, at *4 (S.D.N.Y. Feb. 14, 2005) ("[B]ecause plaintiffs (and their intellectual property) are based in New York, the injury is felt within the state *no matter where the infringement takes place*.") (emphasis added) (citing *Sybron Corp. v. Wetzel*, 46 N.Y.2d 197, 204 (1978)).  On the other hand, some cases have found that to determine where an injury has occurred in a copyright infringement action, "the mere fact that the plaintiff resides in New York and therefore ultimately experiences a financial loss there is not a sufficient basis for jurisdiction."  *Plunket v. Estate of Doyle*, 99 Civ. 11006 (KMW), 2001 U.S. Dist. LEXIS 2001, at *9-10 (S.D.N.Y. Feb. 22, 2001) (finding that license contract granting worldwide rights for the use of certain characters was not shown to cause injury in New York rather than in Washington, D.C. or California, where the license was executed); *see also Freeplay Music, Inc. v. Cox Radio, Inc.*, 04 Civ. 5238 (GEL), 2005 U.S. Dist. LEXIS 12397, at *24-25 (S.D.N.Y. June 23, 2005) (finding that the place of injury is "where the critical events associated with the dispute took place" and finding no personal jurisdiction where plaintiff did not allege unlicensed use in New York or access of infringing performances by New York residents).

This Court need not decide which of these approaches is appropriate, as Plaintiff has adequately pled a New York injury under either approach.  Accepting Plaintiffs' allegations as true, Plaintiffs are the rightful owners of the disputed works, and therefore Brown's licensing of those works and representations that he was the copyright owner were unauthorized.  As Plaintiffs are located in New York, under the test articulated in *McGraw-Hill* and *Design Tex*, the injury resulting from Browns allegedly tortious conduct necessarily was felt in New York. *See McGraw-Hill*, 375 F. Supp. 2d at 256; *Design Tex Group, Inc.*, 2005 U.S. Dist. LEXIS 2143 at *4.  Alternatively, Plaintiffs have sufficiently alleged that "critical events" associated with the dispute took place in New York – to wit, copies of materials alleged to be infringing were marketed and sold to customers in New York.  *See* Stroud Decl. ¶ 13, 16.  Indeed, Plaintiff Stroud alleges that he purchased one such allegedly infringing item himself.  *Id.* ¶ 13.  Thus, unlike in *Freeplay Music*, Plaintiffs have alleged unlicensed use and access of infringing works in New York.  *See* 2005 U.S. Dist. LEXIS 12397 at *24-25.

Thus, Plaintiffs have satisfied their burden of making a *prima facie* showing as to the three elements common to the two subsections of CPLR § 302(a)(3).  However, the inquiry of course does not end there – Plaintiffs must also show either that Brown regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in New York, to establish jurisdiction under

subsection (i), or alternatively, that consequences in New York were reasonably foreseeable and Brown derives substantial revenue from interstate or international commerce, to establish jurisdiction under subsection (ii).

Plaintiffs' argument that that personal jurisdiction over Brown is proper under § 302(a)(3)(i) is premised on the allegation that "[u]pon information and belief, Brown has derived substantial revenue in the form of royalties collected on regular, continuing and ongoing sales of the infringing . . . materials in New York." Stroud Decl. ¶ 16. This allegation falls short of establishing a *prima facie* showing of personal jurisdiction. As the New York Court of Appeals has explained, this provision of New York's long-arm statute was expressly limited to "those who have sufficient contacts with this state so that it is not unfair to require them to answer in this state for injuries they cause here by acts done elsewhere. Thus, CPLR [§] 302(a)(3)(i) necessitates some *ongoing activity within New York State*." *Ingraham v. Carroll*, 90 N.Y.2d 592, 597 (1997) (emphasis in original and additional emphasis added). Plaintiffs nowhere allege that Brown engages in any such regular course of conduct in New York.

With respect to whether a defendant should reasonably foresee that his actions would have consequences in New York, under CPLR § 302(a)(3)(ii), "[t]he test . . . is an objective rather than subjective one." *Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 241 (2d Cir. 1999) (internal quotation marks and citations omitted). The element of foreseeability "requires that a defendant foresee that its tortious act will have *some* consequences in New York, although not necessarily the exact consequences that occurred." *In re DES Cases*, 789 F. Supp. 552, 570 (E.D.N.Y. 1992) (emphasis in original) (citing *Allen v. Auto Specialties Mfg. Co.*, 45 A.D.2d 331 (3d Dep't 1974)). New York courts apply the "reasonable expectation" requirement "in a manner consistent with United States Supreme Court precedent . . . [to] avoid conflict with federal constitutional limits." *Kernan*, 175 F.3d at 241. Thus, "foreseeability must be coupled with evidence of a purposeful New York affiliation, for example, a discernible effort to directly or indirectly serve the New York market." *Id.* (quoting *Schaadt v. Kutter*, 169 A.D.2d 969, 970 (3d Dep't 1991)).

This Court recently has held that, under the foreseeability requirement of CPLR § 302(a)(3)(ii), "[i]t is reasonably foreseeable that the provision of materials that infringe the copyrights . . . of a New York company will have consequences in New York." *McGraw-Hill*, 375 F. Supp. 2d at 256. As Plaintiffs have alleged that they are the rightful owners of the disputed works, they have satisfied this showing of foreseeability. Additionally, Plaintiffs have

alleged that Brown derives substantial revenue from royalties of allegedly infringing works in interstate and international commerce.  Although Brown makes numerous allegations and arguments to the contrary, at this early stage, I accept the Plaintiff's allegations as true and determine whether the allegations are legally sufficient to establish a *prima facie* showing that personal jurisdiction is proper.  Here, Plaintiff has satisfied that burden, but only barely.

    2.  *Due Process*

Having determined that personal jurisdiction is appropriate under the New York long-arm statute, this Court must determine whether the exercise of personal jurisdiction over Brown comports with the Due Process Clause of the Fourteenth Amendment.  Due Process requires that the defendant have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair place and substantial justice.'"  *Best Van Lines*, 490 F.3d at 242 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  The Court must evaluate the "quality and nature" of the defendant's contacts in New York under a totality of the circumstances test, with the crucial question being whether the defendant has "purposefully avail[ed] [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).  The ultimate purpose of the Due Process inquiry is to determine whether the defendant could have foreseen that he would be "haled into court" in New York based on his activities in the state.  *See World-Wide Volkswagen Corp. v. Woodson*, 440 U.S. 286, 297 (1980).  To determine whether minimum contacts exist, the Court "considers the relationship among the defendant, the forum, and the litigation."  *Kernan*, 175 F.3d at 242 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)).

Once minimum contacts have been established, a court must determine whether the exercise of jurisdiction nonetheless would be unreasonable under the "fairness factors" enunciated by the Supreme Court in *Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 113 (1987).  *See also A.I Trade*, 989 F.2d at 83.  The factors to consider are: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interests of the states in furthering social substantive policies.  *Metropolitan Life*, 84 F.3d at 568 (citing, *inter alia*, *Asahi*, 480 U.S. at 113-14 and *Burger King*, 471 U.S. at 476-77).

Plaintiffs have made a *prima facie* showing that Brown has minimum contacts in New York.  As already noted, Plaintiffs allege that Brown has taken various purposeful actions with respect to New York, including making representations to BMG, a New York corporation, that Brown, not Plaintiffs, was the rightful owner of the disputed works; participating in settlement negotiations in both the New York State and Castle Rock Actions and essentially controlling Castle Rock's defense in the latter action; and collecting substantial royalty revenues from allegedly infringing works marketed and distributed in New York.  Accepting Plaintiffs' allegations as true, these acts are sufficient to show that Brown has purposefully availed himself of New York and the benefits and protections of its laws.  Moreover, the exercise of personal jurisdiction over Brown in New York would not be unfair.  Although Brown, an individual living in California, would likely be burdened by having to defend a suit in New York, this burden is outweighed by the other fairness factors.  First, for the same reasons that Brown will be burdened in New York, Plaintiff Stroud, being an 82-year-old man with significant health problems, has a corresponding interest in litigating in New York.  Therefore, the first and third fairness factors balance each other.  Further, New York has a substantial interest in protecting the intellectual property rights of copyright owners in the state.  *M. Shanken Comm'ns, Inc.,v. Cigar500.com*, 07 Civ. 7371 (JGK),  2008 U.S. Dist. LEXIS 51997, at *26 (S.D.N.Y. July 7, 2008).  Consideration of the efficient resolution of this action does not weigh heavily in either party's favor, as Plaintiffs' records and witness are likely in New York, while Brown's records and witnesses are likely in California.  Finally, the Court is hard-pressed to imagine a policy consideration that would be undermined if Brown were subjected to jurisdiction in New York.

Thus, this Court finds that Plaintiffs' allegations in their Complaint and affidavits are sufficient, but again just barely, to make the requisite *prima facie* showing of personal jurisdiction.  It must be borne in mind, however, that Plaintiffs eventually must bear the burden of proving the existence of personal jurisdiction by a preponderance of the evidence, either at an evidentiary hearing or at trial.  *A.I. Trade*, 989 F.2d at 79.

**B.     Venue**

Brown's alternative argument that this action should be dismissed for improper venue may be easily disposed of.  Although Plaintiffs bring ten separate causes of action in this matter, the essence of the action sounds in copyright infringement.  Venue in a copyright case is governed by 28 U.S.C. § 1400(a), which provides that venue is proper "in the district in which the defendant or his agent resides or may be found."  For the purposes of this provision, a

defendant "may be found" in any district where the defendant is subject to personal jurisdiction. *See Cavu Releasing*, 419 F. Supp. 2d at 394. Thus, the legal standard for venue in copyright cases is virtually coextensive with the standard for personal jurisdiction. *AEC One Stop Group, Inc. v. CD Listening Bar, Inc.*, 326 F. Supp. 2d 525, 528-29 (S.D.N.Y. 2004). Since Plaintiffs have made a *prima facie* showing that Brown is subject to personal jurisdiction in New York, Brown's motion to dismiss for improper venue pursuant to Rule 12(b)(3) is denied.

**C.   Prior Pending Action Doctrine**

Simply because this Court has determined, at this early stage of the litigation, that Plaintiffs have met their burden to make a *prima facie* showing of jurisdiction under New York law does not, of course, necessarily mean that it must maintain jurisdiction if another jurisdiction is more appropriate. Indeed, it has long been recognized that "[a]s a part of its general power to administer its docket, a district court may stay or dismiss a suit that is duplicative of another federal court suit." *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000) (citing, *inter alia*, *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) ("As between federal district courts . . . though no precise rule has evolved, the general principle is to avoid duplicative litigation.")). The Second Circuit has found that while "[t]he complex problems that can arise from multiple federal filings do not lend themselves to a rigid test, [they] require instead that the district court consider the equities of the situation when exercising its discretion." *Id.* (internal citations omitted). Thus, it is a well-settled principle in this Circuit that "[w]here there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience . . . or . . . special circumstances . . . giving priority to the second." *First City Nat'l Bank & Trust Co. v. Simmons*, 878 F.2d 76, 79 (2d Cir. 1989) (quoting *Motion Picture Lab. Technicians Loc. 780 v. McGregor & Werner, Inc.*, 804 F.2d 16, 19 (2d Cir. 1986)); *see also Employers Ins. of Wasau v. Fox Entm't Group, Inc.*, 522 F.3d 271, 275 (2d Cir. 2008) ("As a general rule, where there are two competing lawsuits, the first suit should have priority.") (citing *First City Nat'l Bank*, 878 F.2d at 79).

Brown argues that the instant action should be dismissed without prejudice pending the outcome of the California Action, which he asserts is the "prior pending action" in the convoluted web of lawsuits involving Plaintiff Stroud. Brown filed the California Action on May 7, 2008, upon learning that Plaintiff Stroud was claiming copyright ownership of numerous Simone sound recordings, including many of the recordings to which Brown claims an ownership interest. Brown argues that because Plaintiffs did not file the New York action until

September 26, 2008, over four months after the California Action was initiated, the New York action should be dismissed.  Plaintiffs raise a number of arguments in response.  First, Plaintiffs argue that it is the Castle Rock Action, not the California Action, that should be considered the "prior pending action" in this scenario.  Second, Plaintiffs maintain that the California Action constituted an improper anticipatory declaratory judgment action and therefore "special circumstances" weigh in favor of retaining the matter in this district.  Third, Plaintiffs argue that the balance of conveniences favors the instant action.  Each of Plaintiffs' arguments is unavailing.[4]

     1.  *The Castle Rock Action is Not the Prior Pending Action*

The Castle Rock Action cannot serve as the starting point for the "prior pending action" analysis.  To be sure, that action was filed on October 5, 2007, long before either the California Action or the instant New York action was filed.  However, Plaintiffs' argument in this regard runs counter to the very purpose of the prior pending action doctrine: to avoid duplicative litigation between the *same parties* addressing the *same issues*.  *See, e.g.*, *Comedy Partners v. Street Players Holding Corp.*, 34 F. Supp. 2d 194, 196 (S.D.N.Y. 1999) (applying the prior pending action doctrine "when two district courts concurrently have before them actions involving *the same parties and issues*") (emphasis added); *Curcio v. Hartford Fin. Servs. Group*, 472 F. Supp. 2d 239, 243 (D. Conn. 2007) ("[A] court may dismiss an action when a prior pending action has been filed as long as *the controlling issues* in the dismissed action will be determined in the other lawsuit.").  Brown is not a party to the Castle Rock Action; rather, the only parties are Plaintiff Stroud and his former company SPE as plaintiffs, and Castle Rock and Warner Bros. as defendants.  Thus, there is no identity of parties between the Castle Rock Action on the one hand and the California Action or the instant New York action, on the other.  Further, the Castle Rock Action is limited to a single issue: whether Castle Rock infringed the copyright alleged to be owned by Plaintiff Stroud when it used the sound recording "Just in Time" in its film "Before Sunset."  While there may be some overlap in issues among the cases, the infringement of "Just in Time" is but a small subset of the issues ultimately to be resolved in the

---

[4] Plaintiffs additionally contend that because the California Action had been dismissed without prejudice with leave to amend to include additional jurisdictional facts, the California Action was not "pending" at the time the instant action was filed.  This argument lacks merit.  First, the opinion and order dismissing the complaint was not issued until September 30, 2008 – four days after Plaintiffs filed the instant action.  *See Brown v. Stroud*, 2008 U.S. Dist. LEXIS 75784.  Thus, it is clear that the California Action was "pending" at the time Plaintiffs in this action filed their complaint in this Court.  Moreover, the complaint was dismissed with leave to replead, and the case remained open on the docket of the Northern District of California pending the filing of an amended complaint.  Thus, the California Action remained "pending" for the purpose of this analysis.

California Action and/or the instant New York action.  To wit, the essence of both actions is to quiet title in the disputed sound recordings, of which "Just in Time" is but one.  Thus, the Court finds that the Castle Rock Action may not be properly considered the "prior pending action" in this collection of related cases.  Indeed, Plaintiffs seem to acknowledge that the prior pending action doctrine requires identity of the parties, as it has argued that the plaintiffs in the instant action (Stroud and Andy Stroud, Inc.) are not identical to the defendants in the California Action (Stroud and SPE).  Although the proper names of the parties are not identical, this Court finds that there is identity of the parties between the two actions – SPE no longer exists, and in any event, was a company wholly owned by Plaintiff Stroud while it was in existence.  Plaintiff Andy Stroud, Inc. is likewise a company wholly owned by Plaintiff Stroud, and which Plaintiffs maintain shares ownership rights to the disputed works with Plaintiff Stroud.  This commonality is clearly sufficient for the prior pending action doctrine to apply.  Furthermore, the issues to be determined in the California Action and the instant action are not only similar – they are identical.  Indeed, the answer in the California Action asserted counterclaims against Brown that are identical to the claims Plaintiffs brought against Brown in the instant action.  *See Curcio*, 472 F. Supp. 2d at 243 (granting motion to dismiss under prior pending action doctrine where "the operative pleadings in each action contain nearly identical factual allegations").[5]  Therefore, the resolution of these issues in the California Action will be dispositive, one way or the other, of the issues in the instant action.

   2.  *No Special Circumstances Exist*

   Plaintiffs submit that, even if the California Action would otherwise be given priority, the "special circumstances" exception to the prior pending action doctrine should apply because the California Action constituted an improper anticipatory declaratory judgment action.  Without more, Plaintiffs contend that "Brown was aware of Plaintiffs' imminent plans to bring this suit."  Plaintiffs' argument is belied by the procedural history of this case.  While it is true that some courts have found the prior pending action theory inapplicable where the second-filed action followed quickly on the heels of the first, indicating that the first was filed merely to "win the race to the courthouse," *e.g.*, *Recoton Corp. v. Allsop*, 999 F. Supp. 574, 577 (S.D.N.Y. 1998) (declining to apply prior pending action doctrine where the competing actions were filed within two days of each other), this is not such a case.  Brown filed the California Action in May 2008,

---

[5] "In determining whether a claim is barred by the prior pending action doctrine, the court may rely on a comparison of the pleadings filed in the two actions." *Id.* (quoting *Holliday v. City of Newington*, No. 03cv1824 (SRU), 2004 U.S. Dist. LEXIS 5556 (D. Conn. Mar. 19, 2004)).

and the instant action was not filed until the end of September 2008.  The intervening four months between filings undermines Plaintiffs' argument that Brown filed his complaint in anticipation of imminent litigation in New York by Plaintiffs.  Moreover, Plaintiffs make only unsupported arguments that Brown "clearly filed the California Action to stifle Plaintiffs' ability to select the forum where his suit would be heard."  Thus, Brown's complaint seeking declaratory judgment in the California Action was not an improper anticipatory filing.

Because Plaintiffs have not demonstrated that the California Action was wrongly commenced in anticipation of litigation, nor that any other special circumstances justify an exception to the prior pending action doctrine, the Court performs the balance-of-conveniences analysis to determine the appropriateness of maintaining the instant action in this forum.

>    3. *The Balance of Conveniences Favors the California Action*

The inquiry into the balance of the conveniences in the prior pending action doctrine is largely an equitable task, and involves analysis of factors that are substantially similar to the analysis relating to transfer of venue.  *See Employers Ins.*, 522 F.3d at 275.  In the instant action, the balancing of conveniences does not overcome the presumption of allowing the action to proceed in the forum in which it was first filed.

First, the plaintiff's choice of the forum is given substantial weight and will not be disturbed unless the balance of factors weighs strongly in favor of another forum.  *See 800-Flowers v. Intercontinental Florist, Inc.*, 860 F. Supp. 128, 135 (S.D.N.Y. 1994).  However, in the prior pending action inquiry, the plaintiff whose choice of forum is relevant is the *original* plaintiff – i.e., the plaintiff in the first-filed action.  *See id.*  Thus, as noted above, there is a strong presumption in favor of the forum in which the prior pending action was filed.  As a result, the first factor weighs firmly in favor of dismissal.  The second and third factors of the inquiry – location of witnesses and evidence – likely do not weigh heavily either in favor of or against dismissal of the instant action.  While Brown's witnesses and evidence are likely located in California, Plaintiffs' witnesses and evidence are likely located in New York.  Likewise, the fourth factor – convenience of the parties – results roughly in equipoise, because both parties are likely to be inconvenienced by having to litigate on the opposite coast from where they reside.  Plaintiffs argue that Plaintiff Stroud's age and physical health would impede his ability to pursue his claims in California.  Brown, too, would be inconvenienced by defending in New York, but much less so.  Therefore, the fourth factor weighs in favor, but not heavily in favor, of retaining the instant action in this jurisdiction.  Fifth, the "locus of operative facts," points to California as

the more appropriately
obtained an ownership interest in the disputed works, and if not, whether his license of those
works to entities such as Castle Rock and Snapper Music constituted unauthorized and infringing
activity. Each of these events arose in California, where Brown, an individual, lives and
practices law. Although Plaintiffs have made allegations which, taken as true, are sufficient to
meet the relatively low burden to establish that this Court has jurisdiction over Brown, they have
pointed to no specific facts occurring within New York that are sufficient to overcome the
presumption in favor of the original choice of forum. Finally, the relative means of the parties
does not weigh in either party's favor. Neither party made any specific arguments with respect
to this factor, but the Court observes that, for all intents and purposes, both parties are
individuals whose economic means presumably are not limitless. Therefore, on balance, the
relevant factors weigh in favor of dismissal to allow the California Action to proceed.

Based on the foregoing analysis, the Court finds that Plaintiffs have failed to overcome
the presumption in favor of the first-filed action. In such a case, the Second Circuit has
suggested that the appropriate route for a district court facing a lawsuit duplicative of litigation
pending elsewhere in the federal court system is to stay the second suit, dismiss the second suit
without prejudice, or to enjoin the parties from proceeding with it. *Curtis*, 226 F.3d at 138. The
determination as to the appropriate course is soundly in this Court's discretion, *see id.*, and I find
that dismissal without prejudice is the appropriate result, which will allow the salient issues to be
resolved in the California Action. It is worth noting on this score that the Court recently has
been advised that the parties have initiated efforts to settle the California Action. I therefore trust
that the issues running through both cases will be resolved shortly.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Complaint is dismissed without prejudice. The
Clerk of this Court is directed to close this case and remove it from my docket.

**IT IS SO ORDERED.**

New York, New York
March ____, 2009

U.S.D.J.

18